UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLEET ENGINEERS, INC., )
      Plaintiff, )
 ) No. 1:12-cv-1143
-v- )
 ) Honorable Paul L. Maloney
TARUN SURTI and )
MUDGUARD TECHNOLOGIES, )
      Defendants. )
 )

## OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION

Defendant / Counter-Plaintiff Tarun Surti filed a motion titled "Motion for Reconsideration of Jury's Verdict of Non-Willfulness and Damage Amount of 4% Royalty." (ECF No. 389.) The Court will deny the motion.

I.

Surti raises a number of issues which he asks the Court to reconsider. Surti relies on Rule 59(e). A party may file a motion to alter or amend a judgment within 28 days after the entry of judgment. Fed. R. Civ. P. 59(e); *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020). Rule 59(e) permits a court to "reconsider matters properly encompassed in a decision on the merits." *Id.* (cleaned up; quoting *White v. New Hampshire Dept. of Emp't Sec.*, 455 U.S. 445, 450 (1982)). Generally, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Id.*; *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 841 (6th Cir. 2018) ("A Rule 59 motion 'may not be used to relitigate old matters, or to raise new arguments or present evidence that could have been raised prior to the entry of judgment.'") (quoting *Exxon Shipping Co. v. Baker*, 554 US.

471, 486 n.5 (2008)). Under the rule, a district court may reconsider the judgment entered and may grant the motion for any of four reasons: (1) an intervening change in the controlling law, (2) newly discovered evidence, (3) to correct a clear error of law, or (4) to prevent manifest injustice. *Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 833 (6th Cir. 2019).

I.

A. Patent Infringement by Fleet's Group B Products

The Court provided the jury instructions for both literal infringement and infringement under the doctrine of equivalents. (ECF No. 396 Trial Trans. Vol. 3 at 446-49 PageID.4476-79.) On the verdict form, the Court provided a chart for the jury which divided Fleet's allegedly infringing products into two groups, Group A and Group B. (ECF No. 370 Verdict PageID.3932.) The representative images for Group A products and Group B products show that the products in both groups contain ridges that are angled at roughly 45 degrees, separated into four quadrants. The representative images also demonstrate the central difference between the two groups. The products in Group A contain vertical ridges at or near the bottom while the products in Group B do not contain vertical ridges at or near the bottom.[1] The jury found the products in Group A directly infringed Surti's patent and also found that the products in Group B did not directly infringe Surti's patent. (Verdict

---

[1] At trial, Fleet offered a demonstrative exhibit that illustrating the difference between the products in Group A and the products in Group B. (ECF No. 395 Trial Trans. Vol. 2 at 220 PageID.4250.)

PageID.3933.)   The jury then indicated that it did not find direct infringement for the products in Group A under the doctrine of equivalents.  (*Id.* PageID.3934.)

Surti argues that the Court should reconsider and find that the products in Group B infringe his patent under the doctrine of equivalents.  Surti argues that the jury instructions and verdict form are confusing.  Surti's does not develop coherent arguments or reasoning to support this particular assertion.  In both the motion and brief, Surti identifies this concern as falling under the "clear error of law" criteria.  He explains that he raised objections to the instructions and to the verdict form.

The Court required the parties to confer before trial and to file a draft of proposed instructions for the jury, which they did.  (ECF No. 352.)  The Court considered the proposed instructions and objections and provided the parties an initial draft of revised instructions.  After providing the parties with a copy of the initial draft, the Court held the instructions conference off the record, where the Court and parties engaged in a discussion about the various instructions.  After additional revisions, the Court provided the parties with a second revised draft of the instructions and the verdict form, the versions that would be read to the jury.  When the jury was sent back to deliberate, the Court offered the parties a chance to object to the instructions on the record.  Surti objected to the Court's decision not to include instructions for induced infringement or contributory infringement.  (ECF No. 396 Trial Trans. Vol. III at 471 PageID.4501.)  He also objected to the Court's instruction that the jury could not award speculative damages.  (*Id.* at 472 PageID.4502.)  Surti did not, however, raise objections to any of the instructions that were given or to the verdict form.

Nor did he advance any concerns about possible confusion for the instructions that were given. Surti did not argue that the verdict form was confusing.

Surti's failure to explain in the motion and brief why he believes the instructions and verdict form were confusing and his failure to explain in the motion and brief why the confusion caused the jury to find no infringement for Group B products is sufficient for this Court to deny this part of Surti's motion. In addition to any lack of explanation in the motion and brief, Surti did not object to the relevant instructions or to the verdict form. In an abundance of caution, the Court notes one obvious problem with Surti's position concerning the Group B products. The patent repeatedly uses the phrase "vertically extending." In the claim construction opinion issued in 2013, this Court interpreted the phrase to mean "perpendicular or at a 90 degree angle to the road surface." (ECF No. 60 at 10 PageID.395.) On appeal, the Federal Circuit Court of Appeals did not find error in this Court's interpretation of the phrase "vertically extending." (ECF No. 278.) The circuit court did reverse and remand in part because some of Fleet's allegedly infringing products contained vertically extending vanes and channels at or near the bottom. (*Id.* at 7 PageID.348.) The products in Group A contain the vertically extending vanes and channels while the products in Group B do not. Surti cannot now relitigate his interpretation of "vertically extending" through this Rule 59(e) motion by arguing that the phrase should mean "any line that extends or rises above horizon regardless of its angular extension." (ECF No. 390 Br. at 7 PageID.4000.) Surti provides no coherent explanation for how, under the doctrine of equivalents, the products in Group B contain any vertically extending vanes or channels.

B.  Willfulness / Evidence About Events Prior to 2012

Before the Court brought in the members of the public called for jury service, the parties raised several evidentiary issues.  Fleet argued that, based on Surti's trial brief, Surti intended to discuss events that occurred before 2012 when his patent issued.  (ECF No. 394 Trial Trans. Vol. 1 at 5 PageID.4035.)  Fleet noted that the various tort and contract claims between Fleet and Mudguard Technologies, which might involve pre-2012 events, had been resolved and the only issues for trial were patent infringement claims.  (*Id.* at 5-6 PageID.4035-36.)  Fleet also pointed out that no infringement could occur until the patent issued.  (*Id.*)  Surti argued that the pre-2012 events were relevant to damages if the jury found infringement.  (*Id.* at 7-8 PageID.4037-38.)

Following the first break after the trial started, and before the jury returned from lunch, the Court ruled on the admissibility of some of the proposed exhibits.  Proposed Exhibit E included communications and a confidentiality agreement from 2010 and included discussions of a '717 patent, the Anderson patent.  (Trial Trans. Vol. 1 at 100-01 PageID.4130-31.)  Surti acknowledged that the folder on his computer that contained the relevant pages also included the other pages that were the subject of the dispute and that he just "moved the whole file."  (*Id.* at 101 pageID.4131.)  The Court upheld Fleet's objection to admission of the 2010 documents as not relevant to the patent infringement dispute.  (*Id.*)  The Court also excluded proposed Exhibits L and R for the same reason.  (*Id.* at 102 PageID.4232.)  At the conclusion of the discussion, the Court stated that the 2010 events are "outside of the scope of the case at this point, . . . . So we will proceed with that understanding and hopefully there won't be too many objections.  If there are, there are, and I'll deal with

them if I have to." (*Id.* at 113 PageID.4143.) As part of the verdict, the Court asked the jury if Surti had proven that "Fleet Engineers actually knew about, intentionally ignored, or recklessly disregarded that its actions constituted infringement" of Surti's patent. (ECF No. 370 Verdict PageID.3935.) The jury marked "no." (*Id.*)

Surti argues the Court blocked him from presenting evidence to the jury about events that occurred prior to October 2012 which affected the jury's conclusion about willful infringement. In both the motion and supporting brief, Surti raises this issue in the section where he discusses a clear error of law.

To show that an accused infringer willfully infringed a patentee's rights, a jury must find deliberate or intentional infringement. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1329 (Fed. Cir. 2021) (citing *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020)); *see Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021) ("To establish willfulness, the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct."). "To willfully infringe *a patent*, a patent must exist and one must have knowledge of it." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (italics in original). "Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient for a finding of willfulness." *Bayer Healthcare*, 989 F.3d at 988. Willfulness must be determined by the totality of the circumstances, including both exculpatory evidence and evidence showing that the alleged infringer deliberately disregarded the patentee's rights. *Comark Comm'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1190 (Fed. Cir. 1998). Under the Patent Act, following a finding that the defendant willfully infringed, a court may increase the

damages up to three times the amount. 35 U.S.C. § 284; *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1576 (Fed. Cir. 1991).

The Federal Circuit has indicated that, in some situations, evidence about events prior to the issuance of a patent may be relevant to a patent infringement claim and to questions about willfulness. *See Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990). Typically, these situations arise when the infringer manufactures and sells a product before a patent issues.[2] *Id.* (citations omitted). In *Gustafson*, the court affirmed that for willful infringement questions, the finder of fact must consider the totality of the circumstances and noted that, with respect to "'willfulness, there cannot be hard and fast *per se* rules.'" *Id.* (quoting *Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.3d 1101, 1110 (Fed. Cir. 1986)).

With this understanding of the law, the Court considers the evidence identified in Surti's motion for reconsideration, evidence he believes the Court should have admitted for consideration by the jury. Surti quotes email exchanges from April, May and June 2010, in which he and someone from Fleet discuss whether Surti's patent application potentially infringes the Anderson patent.[3] (ECF No. 390 Br. at 5 PageID.3998.) Surti contends that once Fleet concluded that Surti's potential patent did not infringe the Anderson patent, Fleet began to deliberately infringe Surti's patent. (*Id.*)

---

[2] Based on the uncontroverted facts contained in the Final Pretrial Order, it appears that Fleet debuted its allegedly infringing mudflap at a tradeshow in February 2012 before the Patent Office approved Surti's patent in April 2012. (ECF No. 346 PageID.3685.)

[3] Surti may have sought to introduce these emails during his "redirect" testimony. (ECF No. 394 Trial Trans. Vol. 1 at 157 PageID.4187.)

The evidence establishes that Fleet was aware of Surti's patent application. But, knowledge of a patent application does not suffice to show the knowledge of a patent required to find willfulness. "Filing an application is no guarantee that any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable." *A.O. Smith Corp.*, 751 F.2d at 1236; *see, e.g., Conopco, Inc. v. May Dept. Stores Co.*, 46 F.3d 1556, 1562-63 (Fed. Cir. 1994) ("Although these activities may have been undertaken with knowledge that a patent application covering the relaunched lotion formulation was pending (in view of the 'patent pending' notice affixed to the relaunched product), that is insufficient to support a finding of willfulness."); *iFit Inc. v. Peloton Interactive, Inc.*, No. 21-507, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022) ("Knowledge of a patent application alone, however, is not enough to establish knowledge of the patent(s) that issued from that application and therefore not enough to establish willfulness."); *Orthopaedic Hosp. v. Encore Med. L.P.*, No. 19cv970, 2022 WL 254956, at *26 (S.D. Cal. Jan. 27, 2022) ("As district courts in the Ninth Circuit have found, 'knowledge of a patent application alone is insufficient to meet the knowledge requirement for either a willful or induced infringement claim.") (citation omitted; collecting cases).

Although Fleet's knowledge of Surti's patent application might be admissible in the broadest sense of relevance, Surti has not established any prejudice from the exclusion of the emails. Fleet's knowledge of Surti's patent and Fleet's concerns about the Anderson patent would be relevant to the question of willfulness. But, evidence also establishes Fleet's general concerns about patent infringement and would tend to show that Fleet intended to

avoid patent infringement. Surti may be able to advance some other explanation for how the evidence would be relevant to prove willfulness other than Fleet's knowledge. He has not done so, however, in his motion or brief. Surti has not established any likelihood that the outcome would have been different if the emails had been presented to the jury.

Overlooked by both parties in their briefs on this issue, the jury was aware that Fleet knew about Surti's patent application. During cross examination of Fleet's president, Wesley Eklund, Eklund acknowledged that Fleet was aware of Surti's patent application before the patent issued. (*Id.* at 262 PageID.4292.) Thus, the critical fact that the email exchanges would prove, knowledge of the application, was something that the jury was made aware of through other evidence. Eklund also testified that Fleet's primary purpose for seeking an agreement to distribute Surti's mudflap the ability to get into the market quickly. (*Id.* at 266 PageID.4296.)

## C. Lost Profits / Reasonable Royalty

The Court gave the jury instructions about lost profits as damages. (ECF No. 396 Trial Trans. Vol. 3 at 453-55 PageID.4483-85.) The verdict form asked the jury if Surti was entitled to lost profits? (Verdict PageID.3936.) The jury indicated "no." (*Id.*) Because the jury declined to award Surti lost profits, the verdict form informed the jury that it "must calculate the amount of royalties to which he is entitled." (*Id.*) The jury indicated Surti was entitled to 4% of the gross sales of Group A products. (*Id.*) Using the evidence presented at trial, the Court found that Surti was entitled to $228,000 in damages. (ECF No. 378.)

Surti argues that a 4% royalty, $228,000, constitutes manifest injustice when Fleet realized over 4 million dollars in profits. (ECF No. 389 Mot. at 2 PageID.3992; ECF No. 390 Br. at 4 PageID.3997 and at 9-10 PageID.4002-3.)

The patent holder possesses the right to exclude others from making, using or selling the patented invention. *Kings Instruments Corp. v. Perego*, 65 F.3d 941, 949 (Fed. Cir. 1995). A patent holder need not itself make, use or sell the invention in order to invoke its right to exclude. *Id.* "[T]he award of damages compensates for the violation of the patentee's right to exclude others from making, using or selling the invention. The patentee need not make, use or sell the invention to sustain an injury to that right." *Id.* The Patent Act requires a claimant who has established infringement receive damages adequate to compensate for the infringement and the damages cannot be less than a reasonable royalty. 35 U.S.C. § 284; *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995).

The Federal Circuit has identified the *Panduit* four-factor test as "a useful, but non-exclusive, way for a patentee to prove entitlement to lost profits." *Rite-Hite*, 56 F.3d at 1545; *see Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). To make a *prima facie* case for lost profits, a patentee must show (1) a demand for the patented product, (2) the absence of acceptable non-infringing substitutes, (3) its manufacturing and marketing capability to exploit the demand, and (4) the amount of profit it would have made. *Rite-Hite*, 56 F.3d at 1545. The Federal Circuit has rejected the argument that a patent holder must make or sell the patented invention in order to be awarded lost profits. *Kings Instruments*, 65 F.3d at 947; *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119-20 (Fed. Cir. 1996) (finding that "it would be incorrect to bar a patentee who is not yet manufacturing the product

from proving that its actual damages were larger than a reasonable royalty[.]"); *Rite-Hite*, 56 F.3d at 1548 ("Whether a patentee sells its patented invention is not crucial to determining lost profits damages. Normally, if the patentee is not selling a product, by definition there can be no lost profits."). "The only exception is where a patentee has the ability to manufacture and market a product, but for some legitimate reason does not. Even in these situations, though, 'the burden on a patentee who has not begun to manufacture the patented product is commensurately high.'" *Weschler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007) (quoting *Lisle Corp.*, 99 F.3d at 1120).

Surti has not met his burden for this Court to reconsider the jury's finding concerning lost profits. Surti testified that he manufactured and sold his mudflaps. (ECF No. 395 Trial Trans. Vol 2 at 206 PageID.4236.) He also testified about his profit margin. (*Id.*) The jury, however, declined to award Surti any damages based on lost profits. "While this testimony was proffered, the jury was free to reject it." *InTouch Techs., Inc. v. VGO Comm'ns, Inc.*, 751 F.3d 1327, 1343 (Fed. Cir. 2014); *see, e.g., Passage v. DeLoach*, 64 F. App'x 504, 508 (6th Cir. 2003) ("The jury did not credit her testimony, however, as evidenced by its unanimous verdict for defendant.") Fleet offered testimony that Mudguard Technologies, not Surti, manufactured Surti's patented invention. (ECF No. 395 Trial Trans. Vol. 2 at 360 PageID.4390.) Where the parties present conflicting evidence at trial, the jury may "make credibility determinations and believe the witness it considers more trustworthy." *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1168 (Fed. Cir. 2015); *see Silver Cloud, Inc. v. Quikut Div. of Scott Fetzer Co.*, 35 F.3d 566 (6th Cir. Aug. 26, 1994) ("Given this conflicting testimony, it was for the jury to determine which evidence to accept.")

(unpublished table opinion). Surti has not demonstrated that the jury's decision constitutes manifest injustice, meaning that the error was "direct, obvious, and observable." *See Bradley J. Delp Revocable Trust v. MSJMR 2008 Irrevocable Trust*, 665 F. App'x 514, 530 (6th Cir. 2016) (quoting Black's Law Dictionary).

Surti also asks the Court to increase the 4% royalty rate awarded by the jury. Surti relies on the factors, specifically factor 15, outlined in *Georgia-Pacific Corporation v. U.S. Plywood-Champion Papers, Incorporated*, 446 F.2d 295 (2d Cir. 1971).[4] Surti argues that the appropriate royalty rate should be determined by the distribution agreement between Mudguard Technologies and Fleet.[5]

Surti has not met his burden for this Court to reconsider the jury's finding concerning the reasonable royalty rate. Fleet presented evidence that supported the jury's conclusion. Fleet's damages expert, Phillip Kline, testified that the terms of a supply or distribution agreement was an inappropriate comparison for determining a reasonable royalty. (ECF No. 395 Trial Trans. Vol. 2 at 357-58 PageID.4387-88.) Kline testified that a reasonable royalty

---

[4] The *Georgia-Pacific* court, 318 F. Supp. at 1120, described factor 15 as

> The amount a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

[5] Surti testified that, under the agreement, Fleet would purchase his mudflaps for $12.20 and that his cost was $6.39. (ECF No. 395 Trial Trans. Vol. 2 at 206 PageID.4236.)

rate would be three to four percent. (*Id.* at 364-65 PageID.4394-95.) The jury's decision to award a 4% royalty was not a direct, obvious or observable error amounting to manifest injustice.

### D. Judgment Against Mudguard Technologies

Fleet sued both Surti and Mudguard Technologies. In its First Amended Complaint, Fleet alleges a claim for tortious interference with a business relationship against Mudguard Technologies. (ECF No. 99.) Following the claim construction hearing, then counsel for Surti and for Mudguard Technologies filed a motion to withdraw. (ECF No. 41.) The Court granted the motion on September 24, 2013, and instructed Surti and Mudguard Technologies to find new counsel within 30 days. (ECF No. 42.) Surti filed two motions seeking extensions of time (ECF Nos. 44 and 51) which the Court granted (ECF Nos. 48 and 56). In the second order, the Court explained that corporations had to be represented by counsel and then warned Surti and Mudguard that "[i]f no attorney files an appearance on behalf of Defendant Mudguard by December 20, Defendant Mudguard shall be dismissed from this action. No further extensions of time will be granted." (PageID.380.) Surti mailed a third request for an extension of time, which the Clerk of Court did not receive until December 26. (ECF No. 67.) Surti did not provide any proof of service or affidavit indicating when he sent the motion to the Court. The Court denied the third request for an extension of time and entered default against Mudguard Technologies on December 31, 2013. (ECF No. 70.)

On February 5, 2014, attorney Robert Sayfie filed a motion to set aside the entry of default against Mudguard. (ECF No. 72.) The Court denied the motion. (ECF No. 90.)

Sayfie represented Surti and Mudguard Technologies until early 2015. In March 2015, Attorney Sayfie filed a motion to withdraw. (ECF No. 124.) The Court granted the motion on April 9, 2015. (ECF No. 132.)

In March 2018, the Court granted in part Fleet Engineer's motion for entry of judgement and awarded Fleet $195,523.58 in damages on its tortious interference claim against Mudguard Technologies. (ECF No. 255.) The Court then entered judgment (ECF No. 256), from which Surti filed a notice of appeal (ECF No. 270.)

Surti requests reconsideration of the judgment against Mudguard Technologies reasoning that infringement has been confirmed. In his brief, Surti contends Mudguard was wrongfully brought into this infringement lawsuit explaining that Mudguard had nothing to do with his patent or trade secrets. Surti acknowledges that he "is unable to make a motion, but this Court has an obligation to correct its mistakes." (PageID.4002.)

Surti has not demonstrated that this Court can or should provide the relief for Mudguard that Surti seeks. In federal courts, corporations must be represented by counsel. *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-202 (1993). Only an attorney acting on behalf of Mudguard Technologies can request the Court set aside the entry of default. In addition, the Court resolved the tortious interference claim before judgment entered in 2018. The Federal Circuit Court of Appeals affirmed the judgment against Mudguard because Surti could not appeal on behalf of Mudguard.

### E.  Attorney Fees

Surti requests $150,000 in attorney fees. Surti provides no legal authority for his request. Surti does not provide any evidence to support the amount he requests.

Historically, patent litigation used the "American Rule" that, win or lose, each litigant paid its own attorney fees. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 548 (2014). In 1945, Congress amended the Patent Act to allow courts, in their discretion, to award attorney fees to the prevailing party. *Id.* The attorney fee provision has since been amended and now permits attorney fee awards only in "exceptional cases." *Id.* at 549; *see* 35 U.S.C. § 285. The decision to award fees continues to fall within the district court's discretion. *Highmark Inc. v. AllCare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014). Our Supreme Court has interpreted the phrase "exceptional cases" and set forth basic guidelines for determining whether to grant a request for attorney fees in patent infringement cases.

> We hold, then that an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in a case-by-case exercise of their discretion, considering the totality of the circumstances. As in the comparable context of the Copyright Act, "'[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'"

*Octane Fitness*, 572 U.S. at 554 (citation omitted).

Surti has not established that this lawsuit constitutes the sort of exceptional case in which attorney fees should be awarded. The two parties simply disagreed about the proper interpretation of Surti's patent and whether Fleet's mudflap infringed Surti's invention. While Surti prevailed at trial, the substantive strength of his infringement allegations did not "stand out from others." The Federal Circuit concluded that Fleet's claim for non-infringement could not be resolved on the record because there existed genuine issues of

material fact that had to be resolved by a jury. (ECF No. 278 Fed. Cir. Opinion PageID.3347.) And, Surti has not demonstrated that Fleet litigated this lawsuit in an unreasonable manner. His disagreement with Fleet's positions notwithstanding, Surti has not established that Fleet acted outside the bounds of robust and zealous advocacy. Surti has not identified any plainly frivolous claims or requests or fatuous legal arguments advanced by Fleet during the course of this litigation.[6]

Finally, the Court notes that Surti is not an attorney. Generally, pro se parties cannot recover attorney fees under fee-shifting statutes.[7] *See Kay v. Ehrler*, 499 U.S. 432, 437-38 (1991). In *Kay,* the Supreme Court held that attorneys who litigate on their own behalf cannot recover attorney fees under the 42 U.S.C. § 1988. The Court reasoned that awarding attorney fees to pro se litigants, even those who are licensed attorneys, would create a disincentive to seek independent counsel. This same justification applies to other fee-shifting statutes, *Kooritzky v. Herman,* 178 F.3d 1315, 1318-19 (D.C.C. 1999), and circuit courts have consistently declined to award attorney fees to pro se litigants under any of the fee shifting statutes. *See, e.g., Sheffield v. Sec'y Health and Human Servs.*, 983 F.2d 1068 (6th Cir. Dec. 11, 1991) (Equal Access to Justice Act under 28 U.S.C. § 2412) (unpublished table opinion; collecting cases); *Falcone v. IRS*, 714 F.2d 646, 647-48 (6th Cir. 1983) (Freedom

---

[6] In pages 7 through 9 (PageID.4000-02) of his brief, under the headings "Non-Infringement Argumenst" [sic] and "Invalidity of Surti's /755 Patent Arguments," Surti discusses prelitigation history, litigation history and evidence presented at trial. The Court infers that Surti intended to show how Fleet acted unreasonably such that the case would be an "exceptional" one.

[7] The Court acknowledges that Surti was represented by different attorneys early in this lawsuit. Surti has not attempted to justify his request for attorney fees based on the services performed by those attorneys.

of Information Act cases under 5 U.S.C. § 552); *Wright v. Crowell*, 674 F.2d 521, 522 (6th Cir. 1982) (civil rights cases under 42 U.S.C. § 1988).

## II.

Surti has not met his burden for the Court to alter or amend the judgment under Rule 59(e). For Fleet's Group B products, which the jury found did not infringe Surti's patent, Surti has not established that the instructions or verdict form were confusing and he has not provided a sufficient explanation for why he believes those products do infringe his patent. For his willfulness claim, Surti has not established any prejudice from the exclusion of the emails. Surti has not shown manifest injustice for the jury's decision not to award lost profits and to award only 4% royalties. The jury heard conflicting testimony on the two questions and was entitled to make credibility decisions to make the final determination. This Court has no basis at this point to overturn the decision defaulting Mudguard Technologies. Finally, Surti has not established that this lawsuit is an exceptional one such that the Court should award attorney fees.

## ORDER

For the reasons provided in the accompanying Opinion, the Court **DENIES** Counter-Plaintiff Tarun Surti's Rule 59(e) motion for reconsideration. (ECF No. 389.)

**IT IS SO ORDERED.**

Date: June 17, 2022                     /s/ Paul L. Maloney
                                        Paul L. Maloney
                                        United States District Judge