UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| FLEET ENGINEERS, INC., ) | |
| Plaintiff, ) | |
| ) | No. 1:12-cv-1143 |
| -v- ) | |
| ) | Honorable Paul L. Maloney |
| TARUN SURTI and ) | |
| MUDGUARD TECHNOLOGIES, ) | |
| Defendants. ) | |
| ) | |

## ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL

Following trial, Plaintiff Fleet Engineers filed a motion for judgment as a matter of law or for a new trial. (ECF No. 398.)

Defendant and Counter-Plaintiff Tarun Surti holds a reissue patent for a mudflap. Plaintiff Fleet Engineers also makes a mudflap, the AeroFlap. Fleet Engineers sued Surti seeking, among other things, a declaration of noninfringement. Surti countersued for patent infringement. Following a trial, a jury found that some of Fleet Engineers' mudflaps infringed Surti's patent and awarded a reasonable royalty as damages. Fleet Engineers now asks the Court to grant it judgment as a matter of law or, in the alternative, order a new trial. The Court will deny the motion.

I.

Rule 50 of the Federal Rules of Civil Procedure governs motions for judgment of a matter of law in a jury trial. Once a party has been fully heard on an issue during a jury trial, the opposing party may move for judgment as a matter on that issue before the court submits

the matter to the jury. Fed R. Civ. P. 50(a). The moving party must show that "a reasonable jury would not have a legally sufficient basis to find for the [nonmoving] party on that issue[.]" *Id.* When considering a Rule 50(a) motion, the trial court does not weigh the evidence or make credibility determinations. *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999). The court must view the evidence presented at trial in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences. *Hurt v. Coyne Cylinder Co.*, 956 F.2d 1319, 1328 (6th Cir. 1992). The court may grant a Rule 50(a) motion "whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ." *Jackson*, 191 F.3d at 657 (citation omitted); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) ("Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."). The rule does not require the court to grant a Rule 50(a) motion and courts are "if anything, encouraged to submit the case to the jury, rather than granting such motions." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405 (2006).

When a court does not grant the Rule 50(a) motion, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). Following a verdict and entry of judgment, a party has 28 days to file a renewed motion for judgment as a matter of law and may include in the motion a request for a new trial under Rule 59. *Id.* The Sixth Circuit requires a party to have made a proper Rule 50(a) motion before the party can make a motion under Rule 50(b). *Hanover American Ins. Co. v. Tattooed Millionaire Entm't, LLC*, 974 F.3d 767, 780-

81 (6th Cir. 2020). Because a Rule 50(b) motion functions as a renewed motion, a court can only grant a Rule 50(b) motion on grounds advanced in the preverdict motion. *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 491-92 (6th Cir. 2008). The standard for granting a motion made under either Rule 50(a) or 50(b) is the same; the two subsections merely establish the procedural requirements for challenging the sufficiency of the evidence at two different stages of the trial. *See Unitherm Food Sys., Inc.*, 546 U.S. at 399-400.

## II.

At the end of the first day of trial, after Surti rested, Fleet Engineers made a motion for judgment as a matter of law under Rule 50(a). (ECF No. 394 Trial Trans. Vol. 1 at 168 PageID.4198.) The parties approached the question of patent infringement by placing Fleet Engineers' mudflaps into two groups: those with vertically extending channels at the bottom of the mudflap (Group A) and those without vertically extending channels at the bottom of the mudflap (Group B). (*Id.* at 169-70 PageID.4199-4200.) For their Rule 50 motion, Fleet Engineers argued that none of their mudflaps had vanes. (*Id.* at 170 PageID.4200.) Fleet Engineers argued that its mudflaps did not have openings of a size that permit air to pass through but prevent water and debris from doing so. (*Id.* at 171 PageID.4201.) Fleet Engineers also argued that its mudflaps did not infringe under the doctrine of equivalents. (*Id.*) The Court took Fleet Engineer's motion under advisement. (*Id.* at 195 PageID.4225.)

The jury returned a verdict with different outcomes for Fleet Engineer's mudflaps in Group A and for the mudflaps in Group B. (ECF No. 370.) The jury found that the mudflaps in Group A infringed Surti's patent and also found that the mudflaps in Group B

did not infringe Surti's patent. (*Id.* PageID.3933.) When asked if the infringement occurred under the doctrine of equivalents, the jury indicated "N/A." (*Id.* PageID.3934.)

A. Inconsistencies in the Verdict

Fleet Engineers first argues that Group A products cannot literally infringe if the Group B products do not infringe under the doctrine of equivalents. As noted above, the only important difference between the mudflaps in Group A and the mudflaps in Group B is the presence of vertically extending channels at the bottom of the mudflaps in Group A. Fleet Engineers summarizes its argument as follows: "If the Group B products that have openings of an angled orientation do not infringe under the doctrine of equivalents, there can be no Group A literal infringement for having those same openings in a vertical orientation." (PageID.4545.) Surti does not explicitly address this argument in his response brief. Nevertheless, the Court finds that Fleet Engineers has not met its burden.

"The doctrine of equivalents covers accused structures that perform substantially the same function in substantially the same way with substantially the same results." *Ring & Pinion Serv., Inc. v. ARB Corp. Ltd.*, 743 F.3d 831, 835 (Fed. Cir. 2014). The doctrine "prevents the unscrupulous copyist from making unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law." *Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1175 (Fed. Cir. 2020) (cleaned up and quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950)). For the doctrine of equivalents, the critical question is whether allegedly infringing product contains "'elements

identical to or equivalent to each claimed element of the patented invention.'" *Id.* (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)).

Fleet Engineers is not entitled to judgment as a matter of law on this argument. Without dispute, the products in Group A have vertically extending slots, channels and openings, as the Court defined "vertically extending" in the claim construction opinion (ECF No. 60 PageID.395) and in the instructions given to the jury (ECF No. 396 PageID.4473). And, without dispute, the products in Group B do not have vertically extending slots, channels and openings. Indeed, one of the reasons the Federal Circuit remanded this action was because this Court overlooked this difference between the two groups of mudflaps. The Federal Circuit held that "a reasonable jury could find that the presence of *some* channels that are vertically extending across the bottom of the AeroFlap may satisfy this limitation." (ECF No. 278 PageID.3348 - emphasis in original.)

The language in Claim 1 of the patent explains the significance of the "vertically extending" requirement, "for directing water and debris from the wheel in a downward direction toward the ground *and not to the rear or sides of the flap, . . . .*" (ECF No. 226-9 Reissue Patent PageID.2745 - emphasis added.) All of the slots and channels in the products in Group B are at a 45-degree angle. The slots and channels of the mudflaps in Group B do not direct water and debris in a downward direction towards the ground. The slots and channels instead direct the water and debris towards the side of the mudflap. The angled orientation rather than vertical orientation of the channels, slots and openings in Fleet Engineers' mudflaps is not an unimportant or insubstantial difference such that the jury reached inconsistent conclusions concerning the two groups of products.

B.  Openings

Fleet Engineers argues that the openings in its mudflaps, those in both groups, are too large to function in a manner that would permit a jury to find infringement.

Claim 1 in the patent provides that the invention contains

> a plurality of laterally spaced, vertically extending vanes defining a plurality of vertically extending channels on the front side of the flap for directing water and debris from the wheel in a downward direction toward the ground and not to the rear or sides of the flap, and vertically extending slotted openings in the channels of a size permitting air to pass through the openings to the rear of the flap and preventing water and debris from doing so.

(Reissue Patent PageID.2745.)  In the claim construction opinion, the Court interpreted the word "preventing."  As used in the claim, the word did "not mean that absolutely no water passes through the slotted openings."  (ECF No. 60 PageID.398.)  Some water and debris might pass through the slotted openings.  (*Id.* PageID.398-99.)  The Court explained that the patent did not support any quantitative measure of the amount of water that would pass. (*Id.* PageID.399.)

> A person with ordinary skill in the art would understand that the slotted openings should be large enough to achieve aerodynamic benefits while allowing air to pass through the mudflap, while minimizing the amount of water and debris from passing through the mudflap to impair the vision of other drivers.  The patent does not otherwise specify how narrow or wide the slotted openings must be.

(*Id.*)  The Court provided the jury with instructions consistent with the claim construction opinion.  (ECF No. 396 PageID.4474.)

Viewing the evidence in the light most favorable to Surti, Fleet Engineers is not entitled to judgment as a matter of law based on the size of the openings in its mudflaps. Fleet Engineers identifies two statements made by Surti.  Surti testified that the openings in

6

Fleet Engineers' mudflaps were larger than the openings of the drawings of mudflaps in his patent. (ECF No. 394 Trial Trans. Vol. 1 PageID.4185.) Surti also testified that common sense, logic and the laws of physics require the conclusion that "when you have an opening, water and debris smaller than the opening as well as air will go through it." (*Id.* PageID.4177 and PageID.4181.) Fleet Engineers also points to its evidence showing that water will pass through the openings in its mudflaps.

This evidence does not require the Court to grant judgment to Fleet Engineers. That the openings in its mudflaps are larger than those in the illustrations in Surti's patent does not remove the issue from the disputed facts that the jury must decide. The patent does not require the openings to be a particular size; the openings must be "of a size." The fact that some water and debris will pass through the openings in Fleet Engineers' mudflaps also does not remove the issue from the realm of disputed facts. As used in the patent, the word "preventing" does not require the mudflap to stop all water and debris from passing through the opening. Surti testified that when water spray hit Fleet Engineers' mudflaps, the water was trapped inside the channel and flowed down. (Trial Trans. Vol. 1 PageID.4150.) The jury, therefore, had to resolve a disputed fact.

### C. Vanes

Fleet Engineers argues that Surti did not present any evidence to support the conclusion that Fleet Engineers' mudflaps contain "vanes." Surti does not explicitly address this argument in his response brief. Nevertheless, the Court concludes that Fleet Engineers has not met its burden to show that it is entitled to judgment as a matter of law.

The Court interpreted the word "vane" in the opinion and order resolving summary judgment motions. (ECF No. 236 PageID.2832-34.) As used in the patent, the Court found that "vane" means "a relatively thin, rigid structure, like a blade, that is attached to another structure or surface." (*Id.* PageID.2833.) In the patent, the vanes and rear walls form the channels. (*Id.*) The Federal Circuit found "no error" with this interpretation. (ECF No. 278 PageID.3346.)

The record contains some testimony that Fleet Engineers' mudflaps have vanes. The Court must view this evidence in the light most favorable to Surti. During his testimony, Surti asserted that Fleet Engineers' mudflap have vanes. "So we have multiple channels, we have multiple vanes, we have a different shape, but they are still vanes." (Trial Trans. Vol. 1 PageID.4150.) Surti also offered an explanation for why one of the drawings in evidence was confusing. "So the lines were missing, therefore, you could not identify where the vanes is. You couldn't identify where the channels are. You couldn't identify where the rear wall was and where the water had stopped." (*Id.* PageID.4151.) Surti explicitly contradicted Fleet Engineers' assertion that its mudflaps lacked vanes. "This is exactly what this product is doing, and the denial that we don't have vanes, the denial that we don't stop the water, and the denial that we don't have this. This case has been going on for nine years simply because they deny." (*Id.* PageID.4152. He continued: "They deny the thing that is right in front of you. Look at it. . . . They are telling the Court we don't have vanes. What are these? There are 43 of them." (*Id.*)

Fleet Engineers contends that the Anderson drawing relied upon by Surti establishes that its mudflaps do not have vanes. Specifically, Fleet Engineers argues that the dimensions

in that drawing shows ribs that are 0.109 inches wide and 0.125 inches high and looks more like a "hump" (PageID.4549) than a blade.[1] Fleet Engineers contends that such dimensions cannot be considered "relatively thin" or bladelike. In the Court's view, whether a structure with these dimensions is "relatively thin" is a question of fact that must be resolved by the jury.

### D. Surti's Conduct / New Trial

Alternatively, Fleet Engineers argues that Surti's conduct warrants the Court ordering a new trial. In his response, Surti does not address this portion of Fleet Engineers' motion.[2]

Before trial, Fleet Engineers filed a motion in limine asking the Court to preclude Surti from making "disparaging personal remarks directed to the character or actions of Plaintiff, its witnesses, and its counsel[.]" (ECF No. 337 PageID.3610.) Surti did not file any response to the motion in limine. The Court granted the motion explaining that "[c]haracterizations and accusations of a lack of honesty, without proof and without relevance to the claims in this lawsuit, will not be permitted." (ECF No. 361 PageID.3892.)

---

[1] The Court acknowledges that these two numbers do appear in the exhibit. The Court expresses no view whether the two dimensions are the height and width of the disputed structure. The Court has reviewed the transcripts, including Fleet Engineers' closing argument and the oral motion. Fleet Engineers did dispute the existence of a vane in its mudflap. Fleet Engineers did not specifically argue that a structure with these particular dimensions could not be considered "relatively thin."

[2] In his response Surti engages in the very behavior about which Fleet complains. Surti characterizes accuses Fleet Engineers of filing a "defrauding motion" (PageID.4576) and a "malicious lawsuit" (PageID.4577). He accuses Fleet Engineers of engaging in abusive litigation tactics, including "fraudulently hiding" drawings and "falsely denying" that its mudflaps contain certain components. (PageID.4579.) Surti contends that at trial Eklund made false statements and describes one statement as an "absolute lie." (PageID.4581.) Surti also asserts that Plaintiff's counsel "has been intentionally defrauding the judicial system during this litigation for the last ten plus years[.]" (PageID.4584.)

Rule 50(b) provides that the moving party can combine its request for judgment as a matter of law with a request for a new trial under Rule 59. A court may order a new trial on some or on all of the issues. Fed. R. Civ. P. 59(a)(1). The Sixth Circuit instructs that a court may order a new trial under Rule 59(a) "when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015) (cleaned up and quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996)). For a new trial, Fleet Engineers relies on the third avenue. Based on the discussion above, the record contains sufficient evidence to support the verdict. Fleet Engineers does not argue that the damages awarded are excessive.

When a party seeks a new trial based improper statements made the opposing party, courts consider the totality of the circumstances, the nature of the allegedly improper comments, their frequency, the potential relevance of the comments to the issues in dispute, the manner in which the parties and the court treated the comments, the strength of the case and the verdict. *Balsley v. LFP, Inc.*, 691 F.3d 747, 761 (6th Cir. 2012) (quoting *Michigan First Credit Union v. CUMIS Ins. Soc'y, Inc.*, 641 F.3d 240, 249 (6th Cir. 2011)). The moving party must show that the abusive conduct "'consistently permeated' the trial such that the moving party was unfairly prejudiced by the misconduct." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 312 (6th Cir. 2016). To grant a new trial, the court must be convinced that there was a reasonable probability that the abusive conduct influenced the verdict. *Balsley*, 691 F.3d 761.

Quoting extensively from the trial transcript, Fleet Engineers has established that Surti made multiple disparaging accusations during the course of the trial. His comments did not go unnoticed. Following at least one objection, the Court reminded Surti about the order to avoid aspersions and told Surti to proceed "without the editorial comments." (Trial Trans. Vol. 2 PageID.4236-37.)

Nevertheless, the Court declines to grant Fleet Engineers a new trial. Viewing all of the circumstances, Fleet Engineers did not suffer unfair prejudice. At least some of Surti's tendency to argue with witnesses can be explained by the combination of his lack of legal training and his decision to proceed without counsel. Adding to the unusual circumstances, Surti was own principal witness. The Court had to repeatedly remind Surti to avoid making statements while cross examining Fleet Engineers' witnesses. (*See, e.g.,* Trial Trans. Vol. 2 PageID.4313.) The Court also instructed the jury that, at the times when Surti spoke other than when he was a witness, "his words were not evidence." (Trial Trans. Vol. 3 PageID.4460.) Courts presume that juries follow the instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Although the jury found infringement, the verdict cautions against finding that Surti's conduct affected the jury against Fleet Engineers. At least some of the derogatory comments were Surti's attempts to convince the jury that Fleet Engineers' conduct constituted willful infringement. The jury concluded otherwise.

## III.

The Court declines to grant Fleet Engineers' request for judgment as a matter of law and also declines to grant Fleet Engineers' request for a new trial. Fleet Engineers has not

demonstrated that the jury returned an inconsistent verdict. The vertical channels in the Group A products sufficiently explains the different outcomes. The larger sized openings in Fleet Engineers' mudflaps presented a question of fact because Surti's patent only required the openings to be "of a size." The record contains sufficient evidence to create a question of fact for the jury whether Fleet Engineers' mudflaps included vanes, as the Court interpreted that word in the patent. Finally, Surti's conduct at trial does not require the Court to grant a new trial. The Court properly instructed the jury that Surti's testimony, and not his comments, constituted evidence. And, the jury rejected Surti's claim that Fleet Engineers' acted willfully.

## ORDER

For the reasons provided in an accompanying Opinion, the Court **DENIES** Fleet Engineers' motion for judgement as a matter of law or for a new trial. (ECF No. 398.)

**IT IS SO ORDERED.**

Date:   June 17, 2022                                          /s/ Paul L. Maloney
                                                                              Paul L. Maloney
                                                                              United States District Judge